IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| QUINCY DARNELL BLUE,<br>No. 09590-031,<br><br>Petitioner,<br><br>vs.<br><br>T.G. WERLICH,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 17-cv-1215-DRH |

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Petitioner Quincy Blue brought this case on November 6, 2017, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1). On December 20, 2017, the Court granted him leave to file an amended Petition (Doc. 12). Blue invokes *Mathis v. United States*, – U.S. –, 136 S. Ct. 2243 (2016), *United States v. Madkins*, 866 F.3d 1136 (10th Cir. 2016), to challenge the enhancement of his sentence as a career offender, which was based on two prior Kansas escape convictions, as well as two prior convictions in Kansas for possession of controlled substances with intent to sell. (Doc. 12, p. 2). In the Amended Petition, Blue challenges only the use of the drug convictions as predicate offenses.

Respondent filed a response to the Amended Petition at Doc. 20. Petitioner filed a reply (Doc. 22), and later filed a "Notice Regarding Supplemental Authority." (Doc. 24).

For the reasons discussed below, the Amended Petition (Doc. 12) shall be

denied.

## I. Relevant Facts and Procedural History

In 2003, Blue was convicted by a jury of bank robbery, in violation of 18 U.S.C. § 2113(a) & (d) and 18 U.S.C. § 2, and of possession of a firearm during and in relation to a crime of violence (the bank robbery), in violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2. (Docs. 12, 20); *United States v. Blue*, Crim. No. 03-10058-01 (D. Kansas).

His Presentence Report ("PSR") concluded that Blue qualified as a career offender under the United States Sentencing Guidelines ("USSG") § 4B1.2, in part because he had two prior Kansas convictions for Aggravated Escape from Custody. (Doc. 12, p. 2); *United States v. Blue*, Crim. No. 03-10058-01, Civ. No. 09-1108, 2009 WL 2581284 (D. Kansas Aug. 20, 2009). Both of those convictions were for "walk-away" escapes. (Doc. 20, p. 3). The PSR also listed the two prior drug convictions that are at issue here: Sedgwick Co. Case No. 93-CR-237 (Possession of Cocaine with Intent to Sell); and Sedgwick Co. Case No. 93-CR-294 (Possession of Marijuana and Cocaine with Intent to Sell). *United States v. Blue*, Crim. No. 03-10058-01, Civ. No. 09-1108, 2009 WL 2581284 (D. Kansas Aug. 20, 2009). Applying the career-offender guidelines, the PSR calculated Blue's total offense level to be 34, and assigned a Criminal History Category of VI, yielding a guideline range of 360 months to life. Blue did not object to the PSR. On November 3, 2003, Blue was sentenced to a total of 360 months, consisting of 300 months for the bank robbery, and a consecutive 60-month sentence for the firearm conviction. *Id.*

Referencing the PSR, Blue asserts that without the career-offender enhancement, his total offense level would have been only 22, resulting in a guideline range of 84-105 months.[1] The mandatory 60-month consecutive sentence on the firearm offense would have raised that range to 144-165 months; Respondent's recitation of the facts agrees with that calculation. (Doc. 12, p. 2; Doc. 20, p. 4).

Blue's conviction was affirmed on direct appeal. He did not challenge the career-offender enhancement in that proceeding. *United States v. Blue*, Crim. No. 03-10058-01, Civ. No. 09-1108, 2009 WL 2581284 (D. Kansas Aug. 20, 2009).

In 2009, Blue filed a motion under 18 U.S.C. § 2255, arguing that he was entitled to be resentenced without the career-offender enhancement because his escape convictions no longer counted as "crimes of violence" after *Chambers v. United States*, 555 U.S. 122 (2009). *United States v. Blue*, Crim. No. 03-10058-01, Civ. No. 09-1108, 2009 WL 2581284 (D. Kansas Aug. 20, 2009). While the sentencing court found that *Chambers* was retroactively applicable on collateral review, and Blue's § 2255 had been timely filed within one year of the *Chambers* opinion, it denied relief. The court reasoned that even if Blue were able to show that the escape convictions should not have counted to enhance his sentence, his two prior controlled substance convictions were sufficient to support the career-offender-enhancement. *Id.* at *5; (Doc. 12, pp. 2-3; Doc. 20, pp. 5-6).

---

[1] Blue cites ¶34 of the PSR; neither party has provided the PSR to the Court. The Government represents that it does not have access to the PSR, and has taken its information related to the PSR from documents filed in the original criminal case. (Doc. 20, p. 3, n.2).

3

In May 2016, Blue sought authorization to file a successive § 2255 motion, this time invoking *Johnson v. United States*, 135 S. Ct. 2551 (2015) and *Welch v. United States*, 136 S. Ct. 790 (2016), to challenge the use of his prior escape convictions as predicate "crimes of violence." (Doc. 12, pp. 3-4; Doc. 20, p. 6). On June 2, 2016, the Tenth Circuit denied leave to file the successive motion, finding that the career-offender enhancement was properly applied because of the two prior drug convictions, and noting that *Johnson* did not apply to a challenge to controlled substance offenses. *Id.*

Blue filed another petition seeking authorization to file a successive § 2255 on June 21, 2016, raising a new issue – an argument that bank robbery is not a "crime of violence" as defined in the residual clause of 18 U.S.C. § 924(c). (Case No. 16-3186 in the Tenth Circuit). No action has been taken in that matter since the court ordered it abated on June 24, 2016. (Doc. 20, p. 7).

## II. Grounds Asserted for Habeas Relief

Citing *Mathis v. United States*, 136 S. Ct. 2243 (2016), and *United States v. Madkins*, 866 F.3d 1142 (10th Cir. 2017), Petitioner argues that his prior Kansas drug convictions no longer qualify as predicate offenses under USSG § 4B1.2(b) to support his sentencing as a career offender. The *Madkins* court determined that the Kansas Uniform Controlled Substances Act, K.S.A. 65-4161(a) and 65-4163(a)(3), was a "divisible" statute, the elements of which did not categorically match the elements in USSG § 4B1.2(b). *Madkins*, 866 F.3d at 1145; *see also Mathis*, 136 S. Ct. at 2248. Because Kansas law defined "sale" of a controlled

4

substance to include an "offer to sell," it criminalized a broader swath of conduct than did the comparable federal guidelines. On direct appeal, Madkins' sentence was vacated as having been improperly enhanced to the career-offender level based on his prior Kansas convictions for possession of cocaine and marijuana with intent to sell.

Blue argues that under *Madkins*, his identical Kansas controlled-substance convictions can no longer support a career-offender sentence enhancement, thus his 360-month sentence should be vacated. His claim should be cognizable under the savings clause of § 2255(e) because his argument was foreclosed by previous Tenth Circuit case law at the time he filed his original § 2255 motion, and because neither *Mathis* nor *Madkins* had been decided at that time. (Doc. 12, pp. 11-12). Further, he claims that his pre-*Booker* sentence amounts to a "miscarriage of justice" because his sentence is more than double than the range that would have applied without the career-offender enhancement.

### III. Grounds for Denial of Relief

Respondent argues that Blue's claim is not truly based on the *Mathis* decision, thus his claim does not satisfy the requirements of the savings clause – specifically, that it must rely on a new statutory interpretation case that he could not have invoked in his initial § 2255 motion. (Doc. 20, p. 9). Respondent asserts that Blue could have raised his challenge to the career-offender enhancement based on his Kansas drug convictions well before *Mathis*, as was done in other circuits in 2008 and 2012. (Doc. 20, pp. 10-12). Further, Respondent notes that Blue's failure

to raise the present argument on direct appeal should bar the claim under the procedural default rule. (Doc. 20, pp. 12-14). Finally, Respondent argues that the Petition should be rejected on the merits. (Doc. 20, pp. 14-24).

## IV. Applicable Legal Standards

Generally, petitions for writ of habeas corpus under 28 U.S.C. § 2241 may not be used to raise claims of legal error in conviction or sentencing, but are limited to challenges regarding the execution of a sentence. *See Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998).

Aside from the direct appeal process, a prisoner who has been convicted in federal court is generally limited to challenging his conviction and sentence by bringing a motion pursuant to 28 U.S.C. § 2255 in the court which sentenced him. A § 2255 motion is ordinarily the "exclusive means for a federal prisoner to attack his conviction." *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003). And, a prisoner is generally limited to only *one* challenge of his conviction and sentence under § 2255. A prisoner may not file a "second or successive" § 2255 motion unless a panel of the appropriate court of appeals certifies that such motion contains either 1) newly discovered evidence "sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or 2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

However, it is possible, under very limited circumstances, for a prisoner to

6

challenge his federal conviction or sentence under § 2241. 28 U.S.C. § 2255(e) contains a "savings clause" which authorizes a federal prisoner to file a § 2241 petition where the remedy under § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). *See United States v. Prevatte*, 300 F.3d 792, 798-99 (7th Cir. 2002). The Seventh Circuit construed the savings clause in *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998): "A procedure for postconviction relief can be fairly termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense."

The Seventh Circuit has explained that, in order to fit within the savings clause following *Davenport,* a petitioner must meet three conditions. First, he must show that he relies on a new statutory interpretation case rather than a constitutional case. Secondly, he must show that he relies on a decision that he could not have invoked in his first § 2255 motion *and* that case must apply retroactively. Lastly, he must demonstrate that there has been a "fundamental defect" in his conviction or sentence that is grave enough to be deemed a miscarriage of justice. *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013). *See also Brown v. Rios*, 696 F3d 638, 640 (7th Cir. 2012).

### V. Analysis

Initially, the Court must consider whether Blue's claim can be brought within the narrow gate of the savings clause. A claim brought pursuant to *Mathis v. United*

7

*States*, 136 S. Ct. 2243 (2016), satisfies the first condition outlined above, as *Mathis* is a statutory-interpretation case. *See Holt v. United States*, 843 F.3d 720, 722 (7th Cir. 2016); *Dawkins v. United States*, 829 F.3d 549, 550–51 (7th Cir. 2016)).

Secondly, Blue could not have invoked the 2016 *Mathis* decision in his initial § 2255 motion, which he filed in 2009. The Seventh Circuit has stated that "An independent claim based on *Mathis* must be brought, if at all, in a petition under 28 U.S.C. § 2241." *Dawkins v. United States*, 829 F.3d 549, 551 (7th Cir. 2016) (citing *Brown v. Caraway*, 719 F.3d 583, 594–96 (7th Cir. 2013) and *In re Davenport*, 147 F.3d 605, 611–12 (7th Cir. 1998)). However, courts in this circuit have differed on whether, and under what circumstances, the *Mathis* holding may be applied retroactively in a § 2241 case. *See, e.g.*, *Crawford v. Krueger*, No. 17-cv-518, 2018 WL 6019591, at *2 (S.D. Ind. Nov. 16, 2018) (presuming that *Mathis* applies retroactively in a § 2241 case, but denying relief because petitioner was sentenced under advisory guidelines); *Cox v. Kallis*, No. 17-cv-1243, 2018 WL 2994378, at *3 (C.D. Ill. June 14, 2018), *reconsideration denied*, 2018 WL 3232771 (C.D. Ill. July 2, 2018) (*Mathis* claim cannot be brought under § 2241 because *Mathis* is not a new rule); *Neff v. Williams*, No. 16-cv-749, 2017 WL 3575255, at *2 (W.D. Wis. Aug. 17, 2017) (*Mathis* did not announce a new rule, but "merely reaffirmed its 1990 holding in *Taylor*," and is not retroactively applicable).

8

### 1. *Mathis* is Not Applicable to Blue's Claim

The core of the *Davenport* rule is that a prisoner can challenge a federal conviction or sentence under § 2241 only where his argument rests on a new rule of statutory construction that was not available to him at the time he filed his initial § 2255 motion. If the argument does not arise out of a new rule of statutory construction that was unavailable at the time he filed (or could have filed) his initial § 2255 motion, there is nothing inadequate or ineffective about the remedy afforded by § 2255, and the argument cannot be brought in a § 2241 petition. *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013).

Here, while Blue invokes *Mathis*, that case is not directly applicable to his claim that his prior Kansas drug offenses do not match up with the definition of "controlled substance offense" set forth in USSG § 4B1.2(b). *Mathis* held that the elements of the Iowa burglary statute encompassed a wider range of conduct than was criminalized under the "generic burglary" definition in the Armed Career Criminal Act ("ACCA"), thus a prior Iowa burglary conviction could not be used to trigger the career-criminal enhancement under the ACCA. *Mathis*, 136 S. Ct. 2243, 2251. The method of statutory analysis set forth in *Mathis* (comparing the elements of the statute of prior conviction with the elements of the federal offense) was employed by the Tenth Circuit in 2017 to conclude, in a direct appeal, that the Kansas controlled substances act criminalized conduct that was not unlawful under the Guidelines definition of a "controlled substance offense" (USSG § 4B1.2(b). *United States v. Madkins*, 866 F.3d 1136, 1145-48 (10th Cir. 2016). Like the

appellant in *Madkins*, Blue's triggering convictions for the career-offender enhancement were Kansas drug offenses. Blue argues that the rule of statutory construction outlined in *Mathis* should afford him relief in this proceeding.

## 2. *Mathis* Did Not Announce a New Rule of Statutory Construction

As Respondent correctly points out, the method of statutory analysis employed by the *Mathis* court (and the *Madkins* court) was not new. The Supreme Court in *Mathis* noted that it reached its conclusion based on longstanding precedent, citing *Taylor v. United States*, 495 U.S. 575, 600-02 (1990): "We have often held, and in no uncertain terms, that a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense." *Mathis*, 136 S. Ct. at 2251. "*Taylor* set out the essential rule governing ACCA cases more than a quarter century ago." *Id.* See also, *Descamps v. U.S.*, 570 U.S. 254 (2013) (discussing categorical and modified categorical approaches to analyze (respectively) indivisible and divisible statutes, as set forth in *Taylor*); *Shepard v. United States*, 544 U.S. 13 (2005) (applying *Taylor's* reasoning to determine whether prior conviction pursuant to guilty plea qualified as a predicate offense for enhanced sentence under ACCA); *United States v. Elder*, 900 F.3d 491 (7th Cir. 2018) (on direct appeal, applying *Taylor's* categorical approach to the "felony drug offense" described in 18 U.S.C. § 841(b)(1)(A) and § 802(44) to find that Arizona statute defined "dangerous drug" more broadly than the federal statute).

As such, Blue's claim does not depend on a new rule of statutory construction that he could not have invoked in his initial § 2255 motion. "[A] case announces a

new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 109 S. Ct. 1060, 1070 (1989) (citations omitted). The statutory analysis that Blue relies on here, as applied in *Madkins* and *Mathis*, *was* dictated by precedent that existed when he was convicted. That precedent was set forth in *Taylor* in 1990, therefore, it was available to Blue to challenge the career-offender enhancement at the time of his sentencing and direct appeal, as well as during the time frame for filing a collateral attack under § 2255.

While *Mathis* was a newly-issued statutory interpretation case in 2016, it did not represent a change in the law that applies to Blue's circumstances. Rather, the Court once again reaffirmed the "categorical approach" and "modified categorical approach" analysis established in *Taylor v. United States*, 495 U.S. 575 (1990), and reiterated in cases such as *Descamps*, 570 U.S. 254 (2013). The same is true of the 2017 *Madkins* opinion, which concluded, based on the modified categorical approach, that a conviction under the Kansas controlled substances statute could criminalize conduct that was not unlawful within the definition of USSG § 4B1.2(b). The holdings in *Mathis* and *Madkins* were dictated by prior Supreme Court precedent that was final long before Blue's conviction became final. Because these decisions flow directly from *Taylor*, Blue could have raised his argument in a timely filed § 2255. Therefore, his habeas petition does not fit within the savings clause of 28 U.S.C. § 2255(e).

11

The cases cited by Blue in support of his claim are distinguishable. Significantly, *Madkins* was decided on the direct appeal of a conviction, not a collateral attack. Thus, its holding may only afford relief in the context of a § 2241 petition if the claim falls within the savings clause of § 2255(e), which Blue's does not. The cases Blue references where the Tenth Circuit and its district courts have granted relief pursuant to *Madkins* all involve direct appeals, not a collateral attack. (Doc. 22, pp. 8, 22-25; Doc. 24); *United States v. Reyes*, Appeal No. 17-3026 (10th Cir. Feb. 7, 2017); *United States v. Love*, Case No. 15-cr-20098-JAR (D. Kan. Sept 18, 2017).

Blue also raises *Holt v. United States*, 843 F.3d 720, 721-22 (7th Cir. 2016). (Doc. 12, p. 11). In that case, the government conceded that *Mathis* would be retroactively applicable in an initial collateral attack, but the court denied relief because Holt's § 2255 motion was successive, and relief could not be granted under § 2255(h)(2) based on a statutory-interpretation case. The *Holt* court did not determine whether relief pursuant to *Mathis* would be available in the context of a § 2241 proceeding. *Holt*, 843 F.3d at 724.

In his reply, Blue argues that this Court has found that *Mathis* claims may be brought within the savings clause,[2] and that the United States Attorney in this

---

[2] Blue asserts that this Court has found in several cases that a § 2241 petition asserting a *Mathis* claim "facially satisfies" the three conditions of the savings clause. (Doc. 22, p. 4). While this statement is true, Blue fails to acknowledge that the Court's observation was made upon initial review pursuant to Rules 4 and 1(b) of the Rules Governing Section 2254 Cases in United States District Courts. At that early stage, the Court merely concluded that the petition survived threshold dismissal under those rules, and ordered a response to more fully brief the issues. In the orders referenced, the Court reached no conclusion as to the substantive merits of the *Mathis* claims. *See, e.g.*, *Hoskins v. Werlich*, Case No. 17-

12

district has conceded that *Mathis* "has retroactive effect in the context of a 2241 petition," citing *Stoldorf v. Werlich*, Case No. 17-cv-945-DRH (S.D. Ill. Dec. 4, 2017, Doc. 12). (Doc. 22, p. 4). The Government's concession in that case, however, has no application to Blue's claim. In accordance with a directive of the U.S. Department of Justice at the time, the Government deliberately waived any argument that Stoldorf's *Mathis* claim did not fit within the savings clause, thus permitting the retroactive application of *Mathis* in a case where the sentence was enhanced under the ACCA based on prior burglary offenses. *Stoldorf*, Case No. 17-cv-945-DRH (Doc. 10). Stoldorf claimed that his two Montana burglary convictions, as with the Iowa offenses in *Mathis*, did not amount to "generic burglary" and should not have triggered an enhanced sentence under the ACCA.

### 3. Blue's Claim is Procedurally Defaulted

Blue vehemently argues that his current claim was foreclosed by binding Tenth Circuit precedent at the time of his 2003 conviction and through the time he sought relief under § 2255 in 2009, therefore it would have been futile to raise the challenge on direct appeal or in an earlier collateral attack. (Doc. 12, p. 11; Doc. 22, pp. 2-5). The record does not disclose any attempt on Blue's part to challenge his career-offender status at the sentencing stage or on direct appeal. He did not raise this issue until 2009, in the wake of *Chambers v. United States*, 555 U.S.

---

cv-652-DRH (S.D. Ill. July 28, 2017, Doc. 6); *Wadlington v. Werlich*, Case No. 17-cv-449-DRH (S.D. Ill. July 17, 2017, Doc. 4); *Davis v. United States*, Case No. 17-cv-379-DRH (S.D. Ill. June 14, 2017, Doc. 3); *Warren v. Werlich*, Case No. 17-cv-84-DRH (S.D. Ill. March 27, 2017, Doc. 6). Of these cases, *Hoskins* was ultimately dismissed on motion of the respondent; the others remain pending.

122 (2009), and then challenged only the use of his escape convictions as career-offender predicates, not the use of his prior drug convictions.

*Madkins* indeed represented a change in the Tenth Circuit's stance on whether a conviction under the Kansas controlled substance statute could be counted as a "controlled substance offense" under USSG § 4B1.2(b) that would trigger application of the career-offender enhancement. But the Court cannot agree with Blue's premise that he was foreclosed until the advent of *Mathis* and *Madkins* from presenting the argument herein to the trial court or to the Tenth Circuit.

The Supreme Court rejected an identical argument from a habeas petitioner who asserted that his procedural default should be excused because it would have been futile to attempt an attack on his conviction before the announcement of the new opinion on which he sought relief. *Bousley v. United States*, 523 U.S. 614, 623 (1998) (finding that Bousley could have raised issue on direct review even before Supreme Court issued ruling in *Bailey v. United States,* 516 U.S. 137, 144, (1995), which held that conviction for "use" of firearm must be based on proof that defendant "actively employed" the firearm). The Court stated, "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Bousley*, 523 U.S. at 623 (quoting *Engle v. Isaac,* 456 U.S. 107, 130, n. 35 (1982)). *Engle* stated further, "[w]here the basis of a … claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default." *Engle,* 456 U.S. at 134. *See also*

*Montana v. Cross*, 829 F.3d 775, 776-77, 784-85 (7th Cir. 2016) (§ 2241 petitioner could have raised argument during appeal and collateral attack, therefore his claim could not be brought under savings clause).

Madkins prevailed in convincing the Tenth Circuit that the elements of the Kansas drug statute, when compared with the USSG definition of a controlled substance offense, included conduct (an "offer to sell") that went beyond the scope of the federal offense. The rule of statutory construction that supported Madkins' claim was not new, having been explained in *Taylor* in 1990 as well as in other subsequent cases. The argument thus could have been raised at an earlier time, including when Blue was convicted and brought his appeal and initial collateral attack. Had Blue done so, his challenge may have succeeded, or it may have failed. The Supreme Court in *Bousley* and *Engle* made it clear that procedural default applies in such circumstances. Blue's view that challenging the use of his drug convictions as career-criminal predicate offenses in 2003 or 2009 would have been futile does not suffice to demonstrate cause to overcome the default.

Where a claim has been procedurally defaulted by the failure to raise it on direct review, the claim is cognizable in a habeas case only if the petitioner can demonstrate both "cause" for the failure and actual "prejudice," or by showing that he is "actually innocent" of the offense. *Bousley*, 523 U.S. at 622 (citations omitted). Blue's Petition fails the cause prong of the "cause and prejudice" test. He does not argue that he is "actually innocent" of the bank robbery or the firearm offense, nor does the record support such a conclusion. Actual innocence means factual

innocence, not legal insufficiency, *Bousley*, 523 U.S. at 623, and requires a showing that "'in light of all the evidence,'" "it is more likely than not that no reasonable juror would have convicted him." *Id.* (quoting *Schlup v. Delo,* 513 U.S. 298, 327-328 (1995)). Blue cannot make that showing.

The Court does not reach the third savings clause factor (whether Blue's sentence constitutes a fundamental defect grave enough to amount to a miscarriage of justice), because, as discussed above, his claim could have been raised in a § 2255 motion. As such, the § 2255 framework was not "inadequate or ineffective" to address his challenge to the career-offender sentence.

## VI. Disposition

For the foregoing reasons, Blue's Amended Habeas Corpus Petition Pursuant to 28 U.S.C. § 2241 (Doc. 12) is **DENIED**. This action is **DISMISSED WITH PREJUDICE**.

The Clerk of Court shall enter judgment in favor of Respondent.

If Petitioner wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 60 days of the entry of judgment. FED. R. APP. P. 4(a)(1(A). A motion for leave to appeal *in forma pauperis* ("IFP") must set forth the issues Petitioner plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Petitioner does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons*

*v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from a final judgment, do not toll the deadline for an appeal.

It is not necessary for Petitioner to obtain a certificate of appealability from this disposition of his § 2241 petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

**IT IS SO ORDERED.**

Judge Herndon
2018.11.21
13:09:02 -06'00'

United States District Judge